**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Alnisa A. Slader[1]

       Plaintiff,

       v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

Civil Action No. 19-10198 (ES)

OPINION

McNULTY, DISTRICT JUDGE

       Before the Court is plaintiff Alnisa A. Slade's appeal of the Commissioner of Social Security's decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. § 423. (*See* DE 1). This matter has been reassigned from the Honorable Esther Salas to me for purposes of this appeal. I decide this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons below, I will vacate the Commissioner's decision and remand this matter for further proceedings consistent with this Opinion.

---

[1] The Complaint and the case caption render Plaintiff's last name as "Slader." The correct spelling appears to be "Slade."

## I.    BACKGROUND[2]

On February 10, 2015, Slade filed claims for DIB and SSI, alleging disability beginning January 1, 2010 based on arthritis, obesity, lupus, carpal tunnel syndrome, asthma, anemia, depression, and anxiety. (R. at 25; *id.* at 286–98; Complaint ¶¶ 5–6). Slade's claims were initially denied on August 26, 2015, and then denied upon reconsideration on December 9, 2015. (R. at 126–135). Slade requested a hearing, which was held before Administrative Law Judge ("ALJ") Peter R. Lee on June 4, 2018. (*Id.* at 43–50). Slade did not attend her hearing because of illness, but she was represented by Legal Services of New Jersey, and the hearing proceeded with the claimant being declared a non-essential witness. (*Id.* at 20 & 45; Mov. Br. at 1–2). ALJ Lee issued a decision on July 3, 2018, denying DIB and SSI on the grounds that Slade was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (R. at 17–34). Slade then sought review from the Appeals Council and, on March 7, 2019, the Appeals Council denied the request for review, rendering the ALJ's opinion final. (*Id.* at 1–5).

Slade filed this appeal on April 17, 2019. This matter is fully briefed and ripe for determination.

---

[2] Citations to the record will be abbreviated as follows:

      Complaint = Plaintiff's complaint, DE 1

      R. = Administrative Record, DE 6

      Mov. Br. = Plaintiff's moving brief in support of this appeal, DE 16

      Opp. Br. = the Commissioner's opposition brief, DE 17

## II.      LEGAL STANDARDS

### A.      Standard of Awarding Benefits

To receive DIB under Title II or SSI under Title XVI, a plaintiff must show that she is disabled within the definition of the Act. Disability is defined as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). The individual's physical or mental impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).[3]

The Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520 & 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5

---

[3]      In addition, to receive DIB or SSI under the Act, a claimant must show that she was insured under the relevant program "at the time of onset of [her] disability." *Kelley v. Barnhart*, 138 F. App'x 505, 507 (3d Cir. 2005). A claimant must also satisfy the insured status requirements of 42 U.S.C. § 423(c). As ALJ Lee explained, Slade claimed to be disabled as of January 1, 2010, and was insured through September 30, 2012. (R. at 22).

3

(1987). At step five, the burden shifts to the Commissioner. *Id.*

   **Step One**. At step one, the plaintiff must demonstrate that she has not engaged in any substantial gainful activity since the onset date of her severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the plaintiff demonstrates she has not engaged in substantial gainful activity, the analysis proceeds to step two.

   **Step Two**. At step two, the plaintiff must demonstrate that her medically determinable impairment or the combination of her impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of impairments do not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

   **Step Three**. At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments"

in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

**Step Four**. If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether, as of the date last insured, the plaintiff had the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work she had done in the past, the analysis proceeds.

**Step Five**. In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

### B.   Standard of Review

The Court applies plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence." *See* 42 U.S.C. §§ 405(g) & 1383(c)(3); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).

As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In this context, "the threshold for such evidentiary sufficiency is not high." *Id.* Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry. *Id.* at 1157. Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

Importantly, the Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

## III.   ALJ LEE'S DECISION

At step one, ALJ Lee concluded that Slade had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2010. (R. at 22).

At step two, ALJ Lee concluded that Slade had the following severe impairments: osteoarthritis of the bilateral knees; arthritis of the lumbar spine; lupus; carpal tunnel syndrome; asthma; anemia; obesity; obstructive sleep

6

apnea; depression; and anxiety. (*Id.*). These impairments, ALJ Lee concluded "significantly limit the ability to perform basic work activities as required by SSR 85-28." (*Id.* at 23). In addition, ALJ concluded that Slade had several other non-severe impairments: hypothyroidism, hyperlipidemia, and hypertension. (*Id.*).

At step three, ALJ Lee found that Slade did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 23). He indicated that there were no clinical signs or diagnostic findings that met or were comparable to the severity requirements of a listing impairment, giving "specific consideration" to "the applicable listings under section 1.02 and 1.04 *Musculoskeletal System* and 3.03 *Respiratory Disorders* of the listed impairments." (*Id.*). In addition, ALJ Lee concluded that the "severity of the claimant's mental impairments, considered singly and in combination," did not meet or medically equal the criteria of listings 12.04 and 12.06. (*Id.*).

At step four, "[a]fter careful consideration of the entire record," ALJ Lee found that Slade has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with some exceptions (discussed in more detail in Section IV.C). (R. at 24). Based on this determination, ALJ Lee concluded that Slade is unable to perform any of her past relevant work. (*Id.* at 32).

Finally, at step five, ALJ lee concluded that, "considering the claimant's age, education, work experience, and residual functional

7

capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 33).

## IV.   DISCUSSION

Plaintiff assigns three claims of error to ALJ Lee's decision: (1) ALJ Lee's step three analysis of the relevant listings is inadequate; (2) ALJ Lee failed to adequately consider Slade's obesity; and (3) the RFC determination is not based on substantial evidence. (Mov. Br. at 11–29). The Commissioner opposes each ground for remand.

### A.   Step Three: Listings Analysis

#### 1.   Physical Impairments

As to her physical impairments, Plaintiff argues that ALJ Lee did not perform an adequate analysis of how her impairments, individually and in combination, failed to meet any of the relevant listings. This constitutes error, Plaintiff argues, because her impairments "meet[] the requisites of the lupus listing at 14.02A." (Mov. Br. at 16). In response, the Commissioner argues that this was a harmless error because there is no evidence supporting Plaintiff's contention that she either meets or medically equals the lupus listing. (Opp. Br. at 15–16). Although Plaintiff's arguments are flawed, I must nevertheless remand, because the ALJ's decision fails to furnish a basis for meaningful review of this issue.

At step three, the Third Circuit "requires the ALJ to set forth the reasons for his decision." *Burnett v. Comm'r of Soc. Sec.,* 220 F.3d 112, 119–20 (3d Cir. 2000) (citing *Cotter v. Harris,* 642 F.2d 700, 704–05 (3d Cir. 1981)); *see also*

8

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (2009) ("Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient. The ALJ must provide a 'discussion of the evidence' and an 'explanation of reasoning' for his conclusion sufficient to enable meaningful judicial review." (citing *Burnett*, 220 F.3d at 119)). A blanket statement that an ALJ has considered evidence does not meet the requirements of *Diaz* and *Burnett* to discuss the evidence and clearly set forth the reasons for his decision.

Here, ALJ Lee's step three analysis of Plaintiff's physical impairments is the type of conclusory analysis that precludes meaningful review. The entirety of the analysis reads as follows:

> No treating or examining physician has indicated clinical signs or diagnostic findings that meet or are comparable to the severity requirements of a listed impairment. Specific consideration has been given to the applicable listings under section 1.02 and 1.04 *Musculoskeletal System* and 3.03 *Respiratory Disorders* of the listed impairments.

(R. at 23). ALJ Lee does not discuss any of Slade's severe impairments either singularly or in combination, does not discuss any medical evidence, or explain his reasoning. Moreover, as Plaintiff more specifically points out, despite declaring Slade's lupus as a severe impairment at step two, ALJ Lee did not mention the relevant lupus listing (14.02A)[4] in his step three analysis.

---

[4] 14.02 Systemic lupus erythematosus. As described in 14.00D1. With:

> A. Involvement of two or more organs/body systems, with:

> > 1. One of the organs/body systems involved to at least a moderate level of severity; and

Specifically, at step two, ALJ Lee determined that Slade's lupus was a severe impairment which "significantly limit[s] the ability to perform basic work activities." (R. at 22–23). Despite that determination, ALJ Lee did not mention Slade's lupus at step three—either in a discussion of Slade's impairments, or in terms of relevant listings. (*See id.* at 23–24). Perhaps this omission would be harmless if, at step four, ALJ Lee had more thoroughly explained the symptoms and limiting effects of Slade's lupus; then, I might be able to determine whether ALJ Lee's step three determination is supported by substantial evidence. *See Roman v. Comm'r of Soc. Sec.*, No. 19-5756, 2020 WL 6268673, at *6 (D.N.J. Oct. 26, 2020) ("Because the ALJ thoroughly considered Roman's obesity in determining his RFC, I find the judge's failure to discuss obesity in connection with step three to be harmless error."); *Ahmad v. Colvin*, No. 14-2959, 2016 WL 98567, at *10 (N.D. Ill. Jan. 8, 2016) ("While the ALJ did omit any reference to any of the Section 14.00 Listings in his step three discussion, it is clear from the remainder of his opinion that the ALJ considered the Plaintiff's impairments of lupus and fibromyalgia, noting that they did constitute severe impairments and discussing their effects at length in assessing Plaintiff's RFC.").

That, however, did not occur. If anything, the step four analysis creates more confusion on the lupus issue. In his summary of the medical evidence in

---

2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 14.02 (formatting adjusted).

step four, ALJ Lee notes that the medical records showed that Slade has lupus, that she was prescribed medication for lupus, and that she was referred to rheumatology for lupus treatment. (R. at 27, 29 & 31). Moreover, ALJ Lee concluded that, "the claimant's exertional capabilities have been compromised by her arthritis, asthma, *lupus*, and back pain." (*Id.* at 32 (emphasis added)). In fact, the limitations caused by Slade's lupus (and other conditions) caused ALJ Lee to accord some weight (rather than great weight) to certain opinion evidence which overstated the claimant's physical functional abilities. (*Id.*). These findings highlight Slade's lupus as causing concern but fall short of explaining why it does not rise to listing-level severity.

It may be the case that Slade's lupus, while causing some limiting effects, does not entirely meet the criteria of the listing, or that certain of Slade's symptoms do not rise to listing-level severity. But I cannot make this determination based on the ALJ's decision. The ALJ's consideration of Slade's lupus as a severe impairment at step two and his statement about its limiting effects at step four suggest that Slade's lupus is at least worthy of discussion at step three, particularly as to its combined effect with other impairments, but such a discussion is missing.[5] *See Steele v. Berryhill*, No. 17-3539, 2019 WL 1275417, at *5 (S.D. Tex. Mar. 20, 2019) (explaining that record evidence

---

[5]     The Commissioner argues that the ALJ erred (harmlessly, however) in concluding that Slade suffers from lupus in the first instance, citing to a portion of the record which indicates that a test for lupus was negative. (Opp. Br.at 14 (citing R. at 582)). It is not clear that the "negative" test the Commissioner references means that Slade does not suffer from lupus. In any event, in light of the ALJ's numerous references to Slade's lupus and his conclusion that her lupus contributes to her exertional impairments, this only adds to the confusion on this issue.

pertaining to the limiting effects of plaintiff's lupus "necessitated a consideration by the ALJ of Listing 14.02," and that "[t]he ALJ's failure to specifically mention and consider Listing 14.02 was error at step three."); *Fludd v. Saul*, No. 18-01454, 2019 WL 3307251, at *6 (D.S.C. July 16, 2019) ("The ALJ's conclusory finding at Step Three and failure to analyze the aforementioned record evidence in the context of Listing 14.02 precludes meaningful judicial review of this issue."), *report and recommendation adopted*, No. 18-1454, 2019 WL 3306155 (D.S.C. July 23, 2019).[6]

This error constitutes a sufficient basis on which to remand the case to the Commissioner for further explanation of why Slade's impairments, particularly in combination with lupus, do not meet or medically equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. Plaintiff's remaining arguments may (or may not) be rendered moot on remand *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii) (explaining that when a claimant's impairment meets one of the listed impairments, the claimant is deemed disabled and no further analysis is required). However, for additional guidance for both parties on remand, I will address the remainder of Plaintiff's arguments.

---

[6]     Plaintiff asks the Court to go a step further than remand and to affirmatively find that her lupus alone—or in combination with her other impairments—establishes a medical equivalence with the lupus listing and to "remand for the payment of plaintiff's benefits." (Mov. Br. at 20). But Plaintiff's argument—which exclusively relies on the ALJ's step two findings to justify a step three listing determination of disability––does not come close to demonstrating, with citations to record evidence, why Plaintiff meets or medically equals the lupus listing. (*See* Mov. Br. at 11–17).

### 2.    Mental Impairments

Plaintiff similarly argues that the ALJ's discussion of her mental impairments is inadequate. (Mov. Br. at 18). The Commissioner responds that the ALJ's discussion of the mental impairments at step three is supported by substantial evidence. (Opp. Br. at 16). I agree with the Commissioner; however, I note that the ALJ will have to revisit this issue on remand to adequately consider the mental impairments in combination with the physical impairments.

The ALJ analyzed Slade's mental impairments (depression and anxiety) in the context of listings 12.04 and 12.06. Appendix 1 contains three list of criteria, known as Paragraphs A, B, and C. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. The claimant must either (1) satisfy paragraphs A *and* B; or (2) satisfy paragraph C.

As to the first prong, the ALJ omitted a discussion of paragraph A and focused on paragraph B. Paragraph B requires that the mental impairment result in at least one extreme or two marked limitations in a broad area of functioning, which are: understanding, remembering or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting and managing themselves. 20 C.F.R. Pt. 404, Subpt. P, App. 1. A marked limitation is one that is more than moderate, but less than extreme.

ALJ Lee discussed each area of functioning and found only mild or moderate limitations as to each:

> In understanding, remembering, or applying information, the claimant has a moderate limitation. The claimant reported that she had poor focus and concentration and forgets where she places things. However, she was able to provide information about her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment, and respond to questions from medical providers.
>
> In interacting with others, the claimant has a mild limitation. Despite stating that she did not like to be in crowds of people or go outside, the claimant mostly had a good rapport with providers, was cooperative, had good interactions with non-medical staff, and appeared comfortable during appointments.
>
> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. The claimant said that she had concentration difficulties, but there was no mention of distractibility and consultative examination in Exhibit 21F did not show any specific deficits with respect to attention and concentration.
>
> As for adapting or managing oneself, the claimant has experienced a mild limitation. She had appropriate grooming and hygiene, gets along well with providers and staff; had a mostly normal mood and affect, and no problems with temper control.

(R. at 23–24). Plaintiff takes issue with the first two paragraphs of ALJ Lee's analysis stating that "this is not the criteria demanded by 12.00E[]."[7] (Mov. Br. at 18). As to the third and fourth paragraphs, Plaintiff cites to certain findings which she argues contradict the ALJ's findings. (*Id.* at 19).

Notably, Plaintiff makes no attempt to demonstrate why the select evidence she cites mandates a finding of a "marked limitation" (she does not, for example, explain what is required by the regulation she cites (12.00E) and

---

[7]    12.00E provides examples designed to illustrate the nature of each area of mental functioning.

how her evidence meets those requirements). Rather, out of a record that spans hundreds of pages, Plaintiff pulls three quotations which she suggests contradict the ALJ's findings. To the extent Plaintiff invites the Court to perform again the ALJ's weighing of the evidence tending to support or negate a finding of disability, I must decline to do so. Under the substantial evidence standard, the Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182.

Moreover, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009). As is often the case, ALJ Lee's discussion of the relevant listings could have been more detailed at step three—but perfection is not required by the substantial evidence standard. And although Plaintiff criticizes ALJ Lee for failing to cite to the record in his analysis of the Paragraph B criteria, when read as a whole, ALJ Lee provided adequate citation to substantial evidence in support of his determination that Slade's mental impairments did not meet the Paragraph B criteria.[8]

The second prong—the Paragraph C criteria—requires that the asserted mental disorder "be 'serious and persistent'"; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2

---

[8] In light of this conclusion, it is insignificant that ALJ Lee did not discuss the Paragraph A criteria.

years, and evidence that satisfies the criteria in both C1 and C2." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Plaintiff's only argument with respect to the ALJ's analysis of the Paragraph C criteria is that it is "wholly templated" and consists of "non-case-specific statements" and a recitation of the elements. Again, while more detail would be desirable, I will sustain this finding because Plaintiff has not cited to any evidence which requires a different conclusion.

**B.     Obesity**

Plaintiff next argues that the ALJ failed to consider her severe and morbid obesity despite clear Third Circuit guidance and the Commissioner's own protocol. (Mov. Br. at 20–29). In response, the Commissioner argues that ALJ Lee "meaningfully considered Plaintiff's obesity throughout his decision" (Opp. Br. at 18–20).

 The Third Circuit has held that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. In *Diaz*, the ALJ acknowledged the claimant's obesity as an impairment at step two, "but failed to consider its impact, in combination with her other impairments, at step three, as required." *Id.* at 503. The Court relied on Social Security Ruling 00-3p, which provides that a claimant's obesity should be considered on an individualized basis, with a focus "on the combined effect of obesity and other severe impairments afflicting the claimant." *Id.* Thus, "obesity may increase the

16

severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.* (quoting SSR 00-3p). The Court held that "absent analysis of the cumulative impact of [the claimant's] obesity and other impairments on her functional capabilities," the Court cannot adequately review the ALJ decision. *Id.* at 504.

Here, as in *Diaz*, the ALJ concluded that Slade's obesity constituted a severe impairment at step two. (R. at 22). And Plaintiff correctly notes that, at step three, ALJ Lee did not explicitly discuss her obesity—either alone or in combination with any other impairments. (Mov. Br. at 24; R. at 23). This was in error and shall be addressed on remand. *Diaz*, *577* F.3d at 504.[9]

As to the step four analysis, Plaintiff's view is that "the decision ignores [her obesity] in the formulation of RFC." (Mov. Br. at 26). Not so. ALJ Lee spends approximately seven pages summarizing the record medical evidence that he considered in formulating Slade's RFC. (R. at 24–31). This discussion of the medical evidence is located within the step four analysis rather than, for example, at the start of the decision. The location of this discussion is significant because it confirms that ALJ Lee considered this evidence in connection with his step four analysis. (*See id.* at 24 (ALJ Lee announcing

---

[9]    If I were not remanding on other grounds, this issue may not have provided an independent basis for remand. That is because *Diaz* does not alleviate Plaintiff from her burden of demonstrating that the ALJ's failure to discuss obesity was a harmful error. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Plaintiff fails to make any argument as to how her obesity would change the outcome of ALJ Lee's step three analysis. *Perkins*, 79 F. App'x at 515; *Roman*, 2020 WL 6268673, at *6 ("Roman makes a sterile claim of procedural error; he fails to explain or point to any evidence of record as to how his obesity alone or in combination with other impairments either meets one of the listing impairments or impedes his ability to perform light work.").

Slade's RFC noting that he reached his decision "after consideration of the entire record," which he goes on to summarize)). Slade's obesity and specific Body Mass Index ("BMI") are mentioned numerous times throughout that seven-page discussion. (*See id.* at 25, 26, 27, 28, 29, 30, and 31).

Moreover, in his analysis of the medical evidence, ALJ Lee explains that, despite a long medical history, the medical evidence shows the following:

> ]Plaintiff's] physical and mental impairments were routine, she was treated conservatively, and was never hospitalized for physical or mental reasons . . . There was no instance where the claimant's physical or mental state significantly deteriorated to the point where she was completely unable to function.

(R. at 31). A review of the record reveals that this is true as to Slade's obesity— she was treated conservatively for this impairment and advised to engage in regular exercise to lose weight. (*See* R. at 26 & 27). Additionally, ALJ Lee explains how he weighed various pieces of opinion evidence provided by doctors who evidently were aware of and considered Slade's obesity. (R. at 32; *id.* at 61 & 86–104).

Based on the foregoing, I reject Plaintiff's hyperbolic argument that the RFC determination "ignores" her obesity. However, I acknowledge that the ALJ's discussion is largely generalized, contrary to the requirements of *Diaz,*

*577* F.3d at 504. Thus, on remand, the ALJ shall provide a specific discussion of the limiting effects of Slade's obesity, in the context of all impairments.[10]

### C.    RFC Determination

Finally, Plaintiff challenges ALJ Lee's RFC determination, arguing that it is not supported by substantial evidence. (Mov. Br. at 19–36). Indeed—more hyperbole—Plaintiff argues that the RFC determination is "wholly unexplained."

When making an RFC determination, an ALJ is required to consider all of evidence before him. *Burnett*, 220 F.3d at 121. However, an ALJ need not discuss in his opinion "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004), so long as "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors" in reaching his conclusions, *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

"After careful consideration of the entire record," ALJ Lee explained that Slade had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following exceptions:

---

[10]     For the same reasons discussed in footnote 9 *supra*, this issue may not have provided sufficient grounds for remand if presented in isolation. Again, Plaintiff does not explain (with or without supporting evidence) what the additional limiting effects of her obesity are and how, if at all, they preclude her from performing sedentary work with the exceptions described in the decision. *See Gullace v. Colvin*, No. 15-7630, 2017 WL 714356, at *10 (D.N.J. Feb. 23, 2017) ("[O]ther than conclusory statements, Plaintiff does not explain how the ALJ's lack of meaningful consideration as to Plaintiff's obesity would change any of the ALJ's analysis"); *Tietjen v. Berryhill*, No. 17-8030, 2019 WL 1238830, at *4 (D.N.J. Mar. 18, 2019) ("Tietjen failed to specify . . . how her obesity precluded her from performing sedentary work with postural and environmental limitations, as the ALJ concluded she could.").

19

> [S]he is capable of lifting, carrying, pushing, and pulling ten
> pounds occasionally, sitting for six hours in an eight-hour
> workday,[] with the option to stand or change position, and
> standing and/or walking two hours in an eight-hour
> workday. The claimant can occasionally stoop, crouch, and
> climb stairs and ramps, but can never crawl or climb ropes,
> ladders, or scaffolds. Although she can frequently balance,
> finger, and handle, the claimant can never be exposed to
> unprotected heights, hazardous machinery, or to extremes in
> environmental conditions or concentrated pulmonary
> irritants. The Claimant can only do simple and routine
> tasks.

(R. at 24). After announcing his RFC determination, ALJ Lee summarized at

length the medical evidence of record. (*Id.* at 24–31). He then explained that

"the claimant's medically determinable impairments could reasonably be

expected to cause the alleged symptoms; however, the claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are

not entirely consistent with the medical evidence and other evidence in the

record." (*Id.* at 31).

To justify this conclusion, ALJ Lee described the medical evidence as

showing that the treatment for Slade's allegedly disabling impairments "has

been essentially routine and/or conservative in nature," and that she was

"never hospitalized for physical or mental reasons." (*Id.*). ALJ Lee also

explained that "[t]here was no instance where the claimant's physical or mental

state significantly deteriorated to the point where she was completely unable to

function." (*Id.*). Finally, ALJ Lee cited to instances where "the claimant was

noncompliant with her treatment, did not follow through in receiving diagnostic

testing or blood work, and admitted that she was seeking treatment to bolster

her changes for disability." (*Id.*).

In addition to the objective medical evidence, ALJ Lee discussed the opinion evidence, explaining the weight he accorded each opinion. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing *Burnett*, 220 F.3d at 121). Specifically, ALJ Lee explained that he accorded (1) "great weight" to the opinions of Doctors Flaherty and Jusino-Berrios "because both doctors accurately found [consistent with the medical evidence of record] that the claimant has moderate restrictions in her mental functioning that would limit her to simple work"; (2) "some weight" to the opinions of Doctors Schneider and Rabelo because they opined that the claimant was capable of light work, which overstates the claimant's physical functional abilities; (3) little weight/merit to the opinions of Doctors Centeno and Bangalore because they opined that the claimant had no limitations, with little exception; and (4) little weight to the third-party statement submitted by the claimant's sister because she overstated the claimant's physical and mental limitations, inconsistent with the medical evidence of record. (R. at 27 & 32).

Notwithstanding the foregoing, Plaintiff argues that the ALJ's RFC determination is "wholly unexplained." Plaintiff indignantly poses a series of hypothetical questions asking how a person with her impairments could be expected to perform sedentary work. (Mov. Br. at 32–34). The ALJ's decision, Plaintiff argues, does not answer these questions.

Plaintiff seems to suggest that ALJ Lee was required to engage in a formulaic explanation of the RFC by saying, for example, that Plaintiff can sit for six hours in an eight-hour day and then immediately provide an explanation of that specific limitation with citations to record evidence. (Mov. Br. at 32–34). Without this, Plaintiff seems to argue, the decision is not adequately explained. (*Id.*). The RFC was based, however, on the preceding analysis of the factual record.

An ALJ need not "adhere to any set format for explaining his analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Sec*, 274 F. App'x 159, 162-63 (3d Cir. 2008) (quoting *Jones*, 364 F.3d at 505). Here, although ALJ Lee did not present his findings as Plaintiff suggests, his analysis was sufficient to permit meaningful review. ALJ Lee provided a detailed discussion of the medical and opinion evidence, explained why that evidence contradicted Slade's statements about her symptoms and limitations, and specifically explained the weight he accorded various opinions.

Moreover, it is Plaintiff who retains the burden to show why she *lacks* the RFC determined by the ALJ. *Bowen*, 482 U.S. at 146; *see also* 20 C.F.R. § 404.1545(a)(3) ("In general, you [the plaintiff] are responsible for providing the evidence we will use to make a finding about your residual functional capacity."). Yet Plaintiff does not point to a single piece of medical or opinion evidence which was ignored by ALJ Lee; nor does Plaintiff make any argument as to why the record evidence demonstrates any additional functional

limitations. Without any attempt to explain why the record evidence mandates a different RFC, Plaintiff's efforts to point out flaws in the ALJ's decision are in vain. *Moraes v. Colvin*, No. 14-3040, 2015 WL 4041141, at *6 (D.N.J. June 30, 2015) ("Plaintiff has the burden to prove that any undiscussed evidence would warrant additional limitations. . . . Plaintiff makes no argument to that effect."), *aff'd sub nom. Moraes v. Comm'r Soc. Sec.*, 645 F. App'x 182 (3d Cir. 2016).

My remand as to step three as to lupus and obesity may require the ALJ to reopen the RFC determination, because the issues are interconnected. I have devoted considerable attention to this issue, largely because of the disrespectful, and false, assertion of plaintiff's counsel that the RFC determination is "wholly unexplained," and that the ALJ in effect took advantage of a legal services representative's failure to challenge it. (Mov. Br. at 34). Plaintiff suggests bad faith on the part of the ALJ and demands remand to a different ALJ. To be clear, I reject that suggestion. The ALJ's opinion bears every indication of a conscientious effort to apply the law to a complex record. That I, in the exercise of appellate hindsight, have found a flaw in no way reflects on the ALJ's ability or impartiality.

## V.   CONCLUSION

For the foregoing reasons, I VACATE and REMAND the decision of the Commissioner. In doing so, I make no ruling as to what the ALJ's ultimate ruling should be. An appropriate Order accompanies this Opinion.

Dated: January 15, 202                      /s/ Kevin McNulty
                                            _____
                                             Kevin McNulty, U.S.D.J.

23